IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| KEITH BROWN, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | No. 14-cv-09922 |
| v. | ) ) | Judge Andrea R. Wood |
| THE CITY OF CHICAGO, SGT. EMMETT MCCLENDON, Star No. 1467, Individually, and OFFICER MIESZALA, Star No. 15179, Individually, | ) ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

This lawsuit stems from the arrest of Plaintiff Keith Brown. On November 13, 2013, Paul Mieszala, an undercover officer with the Chicago Police Department, bought narcotics from an individual. The buy happened in front of a McDonald's restaurant on 95th Street in Chicago, Illinois, and was witnessed by Sergeant Emmett McClendon. Brown claims he was wrongfully identified and arrested for this narcotics sale. As a result, Brown has sued the City of Chicago, McClendon, and Mieszala (collectively, "Defendants"), alleging false arrest in violation of his Fourth Amendment rights and malicious prosecution in violation of Illinois state law. McClendon now moves for summary judgment as to the claims against him.[1] The Court grants that motion for the reasons that follow.

---

[1] Count II of Brown's complaint also asserts claims against McClendon and Mieszala for due process violations. Both McClendon and Mieszala have moved for summary judgment on Count II. But Brown does not contest the entry of summary judgment on those claims. (Pl.'s Resp. Br. at 2, Dkt. 25.) Accordingly, summary judgment will be entered in favor of McClendon and Mieszala as to Count II. (*See Id.*)

**BACKGROUND**

On November 13, 2013, at around 10:00 a.m., Brown walked to a McDonald's restaurant on 95th Street in Chicago, Illinois to get coffee. (Defs.'s Resp. to Pl.'s Stmt. of Add'l. Material Facts ("DRPSAF") ¶ 1, Dkt. No. 30.) Around the same time that Brown was heading to McDonald's, officers assigned to the Chicago Police Department's "661 team" had planned to conduct a narcotics-buy operation. (Pl.'s Resp. to Defs.'s Stmt. of Undisputed Material Facts ("PRDSF") ¶ 7, Dkt. No. 26.)[2] The plan was for Officer Mieszala to drive along 95th Street by himself in an unmarked vehicle and attempt to buy drugs. (*Id.* ¶ 9.) Meanwhile, McClendon served as both the supervisor of the 661 team and the covert surveillance officer on scene. (*Id.* ¶ 11; DRPSAF ¶ 11.) As the covert surveillance officer, McClendon's responsibilities included walking around the street, watching Mieszala, and helping to ensure Mieszala's safety. (PRDSF ¶ 12.) McClendon had to be in close proximity to Mieszala in the event that Mieszala was put in harm's way and needed aid. (*Id.* ¶ 13.) Also on the 661 team were several enforcement officers parked in a nearby unmarked vehicle. (*Id.* ¶ 15.)

What happened during the alleged drug transaction that followed is largely disputed. However, both sides acknowledge that as Brown arrived at the McDonald's entrance and reached for the door handle, several police officers started running towards him. (PRDSF ¶ 47.) The officers grabbed Brown, and a subsequent search revealed that Brown had $39 in currency on his person; he did not, however, have the marked currency allegedly used during the drug buy. (DRPSAF ¶¶ 4, 5.) The police officers never recovered the marked currency. (*Id.*) Brown was arrested at the scene and brought to the police station. (PRDSF ¶ 52.) There, Mieszala completed

---

[2] The Court observes that Defendants failed to comply with Local Rule 56.1 by filing a Reply to Brown's Response to Defendants' Statement of Undisputed Facts. (Dkt. No. 29.) Such a reply is not contemplated by Local Rule 56.1 and Defendants did not seek leave to file this extra document. Accordingly, the reply is stricken.

the arrest and case report. (*Id.* ¶ 53.) After a criminal trial on the underlying charge, Brown was found not guilty (*Id.* ¶ 56.)

According to Defendants, the drug transaction occurred in the following manner. Mieszala was driving westbound on 95th Street when he made eye contact with a man standing in front of McDonald's. (*Id.* ¶ 22.) The man walked towards Mieszala's vehicle and gestured for him to drive around the corner. (*Id.*) Mieszala parked his car around the corner and the man walked up and asked, "What do you need?" Mieszala told the man he was looking for two bags of heroin. (*Id.* ¶¶ 24, 30.) The man told Mieszala to wait and walked away from the car. While he was waiting for the man to return, Mieszala gave the 661 team the man's description. (*Id.* ¶ 32.) The man returned moments later and Mieszala paid him $20 for two bags of drugs. (*Id.* ¶ 34.) After driving away, Mieszala alerted the enforcement officers that the buy was successful and provided the suspect's approximate location. (*Id.* ¶ 39.) This triggered the enforcement team into action. The enforcement team drove from their position, arriving at the McDonald's within about 30 seconds, and saw Brown, an individual who they thought matched the description Mieszala had provided. (*Id.* ¶¶ 41, 45.) The enforcement team grabbed Brown, searched him, and placed him in handcuffs. (*Id.* ¶¶ 48, 49.) Meanwhile, Mieszala drove back around the McDonald's to check out the arrested man and confirm that the enforcement officers had grabbed the right person. (*Id.* ¶ 51.) After looking Brown over, Mieszala called and told his team that they had the right man. (*Id.*)

At Brown's criminal trial, McClendon testified that he had a clear and unobstructed view of the controlled buy between Mieszala and Brown from his surveillance location across the street. (DRPSAF ¶ 12.) McClendon further testified during the trial that he never lost sight of Brown from the time of the buy until the time Brown was placed into custody. (*Id.* ¶ 14.)

3

McClendon claimed that he observed Brown take the marked currency from Mieszala and hand Mieszala narcotics. (*Id.*) Afterwards, according to McClendon's testimony, Brown walked across the street towards a black vehicle, handed the money to an unknown black male in the black vehicle, and then walked southbound towards 95th Street. (*Id.* ¶¶ 13, 14.)

Mieszala's testimony at Brown's criminal trial differed slightly from that of McClendon, in that Mieszala claimed that Brown did not initially provide him with the narcotics. (*Id.* ¶ 9.) Instead, Mieszala testified that he told Brown he wanted to buy narcotics, and Brown subsequently walked away and out of Mieszala's sight. (*Id.*) According to Mieszala, Brown returned shortly thereafter with two bags of heroin and exchanged them with Mieszala for $20 of marked currency. (*Id.* ¶ 10.) Neither Mieszala nor any of the other officers testified that they observed the man in the black vehicle. (*Id.* ¶ 21.) Additionally, the police report in the case does not describe Brown handing the currency to a man in a black vehicle. (*Id.* ¶ 21.)

Later, during his deposition for this case, McClendon provided testimony that differed from his own testimony during the criminal trial but more closely paralleled Mieszala's trial testimony. McClendon testified at this deposition that he initially observed Brown converse with Mieszala, at which point nothing was exchanged. After a brief conversation, Brown walked away from Mieszala's car and McClendon lost sight of Brown. (*Id.* ¶ 18.) Shortly thereafter, Brown returned to Mieszala's vehicle and then exchanged the narcotics for marked currency. At that point, McClendon saw Brown walk up to the black vehicle and hand the money over to an unidentified black man. (*Id.* ¶ 19.)

As for Brown, he asserts that he did not encounter any police prior to reaching McDonald's. (DRPSAF ¶ 4.) He also denies selling narcotics to anyone on November 13, 2013. (*Id.* ¶ 6.)

4

**STANDARD OF REVIEW**

When considering a motion for summary judgment, the Court construes all facts and reasonable inferences in the light most favorable to the nonmoving party. *See Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008). But "favor toward the nonmoving party does not extend to drawing inferences that are supported by only speculation or conjecture." *Fitzgerald v. Santoro*, 707 F.3d 725, 740 (7th Cir. 2013) (internal quotation marks omitted). The "mere existence of *some* alleged factual dispute" does not suffice to defeat a motion for summary judgment. *Dawson v. Brown*, 803 F.3d 829, 833 (7th Cir. 2015) (internal quotation marks omitted) (emphasis in original). Rather, summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material facts are facts that might affect the outcome of the suit under the applicable substantive law." *Lawrence v. Kenosha Cty.*, 391 F.3d 837, 841–42 (7th Cir. 2004) (internal quotation marks omitted). The genuineness of a dispute suffices to defeat a motion for summary judgment only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 842 (internal quotation marks omitted).

**DISCUSSION**

McClendon seeks summary judgment on Brown's claim under 42 U.S.C. § 1983 for false arrest, as well as for Brown's state law malicious prosecution claim. The Court begins by analyzing the § 1983 false arrest claim.

Liability under § 1983 requires proof "that the conduct complained of (1) was committed by a person acting under color of state law and (2) deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Yang v. Hardin*, 37 F.3d 282, 284 (7th Cir. 1994). To succeed in a § 1983 action, a plaintiff must show a direct connection

between the alleged misconduct and the official sued. *See Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983). While direct participation is necessary, this does not mean that only officers who actively caused the constitutional deprivation can be held liable under § 1983. In certain circumstances, an officer's failure to act may make him culpable under § 1983. *See Yang*, 37 F.3d at 285. In particular, an officer who is present and fails to intervene in an arrest that he knows is unjustified may also be liable under § 1983. *Id.* However, "supervisors who are merely negligent in failing to detect and prevent subordinates' misconduct are not liable." *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988). "Gross negligence is not enough either. The supervisors must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see. They must in other words act either knowingly or with deliberate, reckless indifference." *Id.* at 992–93. Here, the evidence cited by Brown simply cannot support the conclusion that McClendon acted knowingly or with deliberate, reckless indifference.

Brown provides three reasons why he believes that McClendon must have known that he was being falsely arrested. First, Brown asserts that because McClendon observed the entire narcotics transaction take place, he must have noticed that Brown was not the individual who sold narcotics to Mieszala. Brown believes that even though McClendon knew based on his eye-witness observation that Brown was not the individual who sold narcotics to Mieszala, McClendon nonetheless failed to use his supervisory authority to prevent Brown from being arrested for a crime he did not commit. Second, Brown contends that McClendon and Mieszala both knew that Brown was not the individual who sold the narcotics because, when Brown was arrested just minutes after the alleged buy took place, he did not have the marked funds. Third, Brown points to discrepancies between McClendon's criminal testimony and Mieszala's case

incident report, which, according to Brown, demonstrate that McClendon observed a different version of events than what Mieszala reported.

To survive McClendon's summary judgment motion, however, Brown must offer evidence from which a reasonable jury could conclude that McClendon actually knew, or deliberately and recklessly ignored, that Brown had been misidentified as the narcotics offender. The evidence cited by Brown does not meet that standard. At best, the evidence might support the conclusion that McClendon should have known that Brown did not look like the same person who was involved in the narcotics transaction with Mieszala or that Mieszala's version of events was not accurate. But those conclusions fall short of the sort of intentional conduct that a jury would need to find to hold McClendon accountable for a false arrest carried out by other police officers.

After all, viewing the evidence in the light most favorable to Brown, even if McClendon had doubts about whether or not Brown was the correct offender, he also would have known that Mieszala had positively identified Brown as the offender and that Mieszala had a much closer view of the individual than McClendon, who was viewing the entire transaction from across the street. That Brown did not have the marked currency on his person at the time of the arrest was consistent with McClendon's testimony that he saw the individual believed to be Brown give the money to an unidentified man in a black vehicle. While the police officers' inability to recover the marked funds might have weakened the prosecutor's case at trial, it does indicate much, if anything, about what McClendon knew at the time. And finally, the discrepancies between McClendon's testimony at the criminal trial and Mieszala's case incident report provide scant evidence from which to conclude that one, or both, are lying about what actually happened on November 13, 2013. Brown does not, for example, point to any evidence that Mieszala provided

one description of the offender while McClendon provided a different description—a difference in accounts that might indeed indicate McClendon had actual knowledge that Brown was not the offender. Even construing all facts in favor of Brown, a reasonable jury could not conclude from the discrepancies between McClendon's and Mieszala's versions of events that McClendon actually knew or acted with deliberate, reckless indifference to whether Brown was the correct offender. Overall, the evidence cited by Brown to demonstrate McClendon's knowledge at the time of the arrest relies on speculation. And such "[s]peculation is insufficient to withstand summary judgment." *Ortiz v. John O. Butler Co.*, 94 F.3d 1121, 1127 (7th Cir. 1996); *see also Stephens v. Erickson*, 569 F.3d 779, 786 (7th Cir. 2009) (explaining that a party opposing summary judgment "must point to specific facts showing that there is a genuine issue for trial, and inferences relying on mere speculation or conjecture will not suffice"). Accordingly, Brown's false arrest claim against McClendon cannot survive.

As for the malicious prosecution claim against McClendon, Brown must prove that he was subjected to judicial proceedings for which there was no probable cause, that McClendon instituted those proceedings maliciously, and that the proceedings were terminated in his favor. *See Curtis v. Bembenek*, 48 F.3d 281, 286 (7th Cir. 1995). Because Brown cannot show that McClendon knew Brown's arrest was unlawful, he also cannot establish that McClendon knowingly subjected him to proceedings for which there was no probable cause. Thus, Brown also has failed to meet his burden at the summary judgment stage with regards to the malicious prosecution claim.

## CONCLUSION

For the foregoing reasons, Defendant McClendon's motion for summary judgment (Dkt. No. 18) is granted.[3]

ENTERED:

Dated: September 26, 2017

_____
Andrea R. Wood
United States District Judge

---

[3] In light of the Court's ruling, there is no need to address the parties' arguments with respect to qualified immunity.